**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| GREGARY JOHNSON AND LAUREN DANN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs<br><br>v.<br><br>MCKESSON CORPORATION,<br><br>Defendant. | Civil Action No. 3:26-cv-2995<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiffs Gregary Johnson and Lauren Dann, individually and on behalf of all others similarly situated, assert the following against Defendant McKesson Corporation ("McKesson" or "Defendant"), based on personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1. McKesson Corporation is a leading healthcare company specializing in pharmaceutical distribution, medical supply chain management, and health IT solutions. McKesson also provides the back-end management services for healthcare practices—most notably through The US Oncology Network.

2. As a healthcare company, McKesson was well aware of the need to adopt robust data security measures to ensure the sensitive data in its custody was adequately protected from unauthorized use and disclosure.

3. It did not. On or about August 25, 2026, unauthorized third parties gained access to certain of McKesson's third-party applications (the "Data Breach") and exfiltrated data which contained sensitive personal and protected health information ("PII/PHI").

4. McKesson had a duty to safeguard and protect consumers' PII/PHI that was entrusted to it and could have prevented the Data Breach had it implemented and maintained reasonable data security measures and protocols.

5. McKesson was fully aware that it was a prime target for cyber threats given its role as a major healthcare company. The prevalence of these types of healthcare services breaches put it on notice of this fact.

6. The Data Breach was a direct and proximate result of McKesson's failure to implement and follow basic security procedures.

7. Because of McKesson's failures, unauthorized individuals were able to access and pilfer Plaintiffs' and Class Members' PII/PHI.

8. As a result, Plaintiffs and Class Members are at substantially increased risk of future identity theft, both currently and for the indefinite future. Plaintiffs' and Class Members' PII/PHI that were compromised by cybercriminals in the Data Breach, is highly valuable because it is readily useable to commit fraud and identity theft.

9. Plaintiffs, individually and on behalf of all others similarly situated, brings claims for negligence, breach of implied contract, unjust enrichment, and declaratory and injunctive relief

10. Plaintiffs seeks damages and injunctive relief requiring McKesson to adopt reasonably sufficient practices to safeguard the PII/PHI in McKesson's custody and control to prevent incidents like the Data Breach from recurring in the future.

11. Given that the information relating to the Data Breach, including the systems that were impacted and the configuration and design of McKesson's systems, remain exclusively in McKesson's control, Plaintiffs anticipate additional support for their claims will

be uncovered following a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Members of the Class defined below, and a significant portion of putative Class Members are citizens of a different state than McKesson.

13. This Court has general personal jurisdiction over McKesson because McKesson maintains its principal place of business in Irving, Texas.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in or were directed from this District, including McKesson's corporate cybersecurity governance, risk-management program, third-party application oversight, data-protection decisions, executive supervision, and response to the Data Breach.

## PARTIES

### I. Plaintiffs

15. Plaintiff Gregary Johnson is a citizen and resident of the State of California.

16. Plaintiff Johnson is a patient at a McKesson-affiliated healthcare practice. He provided his PII/PHI to McKesson prior to the Data Breach as a condition of and in exchange for paying for and receiving care.

17. Plaintiff Lauren Dann is a citizen and resident of the State of California.

18. Plaintiff Dann is a patient at a McKesson-affiliated healthcare practice. She provided her PII/PHI to McKesson prior to the Data Breach as a condition of and in exchange

for paying for and receiving care.

### II. Defendant

19. Defendant McKesson Corporation is incorporated in Delaware and has its headquarters and principal place of business located at 6555 State Highway 161, Irving, Texas 75039.

## BACKGROUND

### I. McKesson Obtains, Collects, and Stores PII/PHI

20. McKesson is one of the largest healthcare and pharmaceutical distribution companies in the United States, providing medicines, medical supplies, technology, and related services to healthcare providers, pharmacies, and patients nationwide.

21. In the ordinary course of its business, McKesson collects, maintains, and stores substantial volumes of sensitive personal and protected health information belonging to patients, healthcare providers, and other individuals, including the types of information described herein.

22. By collecting and storing Plaintiffs' and Class Members' PII/PHI, Defendant assumed a duty to implement and maintain reasonable and adequate security measures to protect that information from unauthorized access, use, and disclosure.

23. McKesson is in complete operation, control, and supervision of its systems, and configured and designed its systems without adequate data security protections.

24. McKesson did not properly verify, oversee, and supervise its entrustment of Plaintiffs' and Class Members' PII/PHI.

25. By obtaining, using, disclosing, and deriving a benefit from Plaintiffs' and Class Members' PII/PHI, McKesson assumed legal and equitable duties and knew or should

have known that it was responsible for protecting Plaintiffs' and Class Members' PII/PHI from disclosure.

26. Plaintiffs and Class Members reasonably expect that a major healthcare corporation such as McKesson would use the utmost care to keep their PII/PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

27. McKesson failed to prioritize data and cyber security by adopting reasonable data and cyber security measures to prevent and detect the unauthorized access to Plaintiffs' and Class Members' PII/PHI.

28. Had McKesson followed industry guidelines and adopted reasonable security measures, McKesson would have prevented the theft of Plaintiffs' and Class Members' PII/PHI.

## II. FTC Guidelines

29. McKesson is prohibited by the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

30. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

31. The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal

information that is no longer needed, encrypt information stored on networks, understand its network's vulnerabilities, and implement policies to correct any security problems.

32. The FTC further recommends that companies not maintain PII/PHI longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

33. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

34. McKesson failed to properly implement basic data security practices. McKesson's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII/PHI, or to prevent the disclosure of such information to unauthorized individuals, as reflected by the sensitive Social Security information stolen, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

35. McKesson was always fully aware of its obligations to protect the PII/PHI of consumers because of its business of obtaining, collecting, and disclosing PII/PHI as well as collecting, storing, and using other confidential personal and financial information. McKesson was also aware of the significant repercussions that would result from its failure to do so.

## SUBSTANTIVE ALLEGATIONS

## I. The Data Breach

36. McKesson discovered the Data Breach on or about August 25, 2026.

37. On or about August 28, 2026, McKesson filed a Form 8-K with the SEC disclosing that it had identified a cybersecurity incident involving unauthorized access to a number of the company's third-party applications and the theft of data, and stating that its investigation into the incident's scope was ongoing and that, as of the filing, it had not determined the incident to be material.

38. The cybercriminal extortion group ShinyHunters has publicly claimed responsibility for the Data Breach.

39. According to public reporting, ShinyHunters claims to have obtained initial access through voice-phishing ("vishing") social engineering attacks against multiple McKesson employees.

40. ShinyHunters claims to have exfiltrated approximately one terabyte of data over a four-day period between August 21 and August 25, 2026.

41. ShinyHunters claims the exfiltrated data includes approximately 284 million data records allegedly including, among other things:

a. Names;

b. Home addresses;

c. Dates of birth;

d. Social Security numbers;

e. Patient identification numbers;

f. Phone numbers;

g. Email addresses;

h. Medicaid numbers;

i. Medical record numbers;

j. Medication and allergy information;

k. Diagnoses, illnesses, and disability information;

l. Appointment information;

m. Physician information;

n. Information relating to deceased and terminally ill patients;

o. Prescription and medication shipment records;

p. Invoices;

q. Employee information; and

r. Internal McKesson communications and Salesforce support case records.

42. As of the filing of this Complaint, McKesson has not publicly confirmed the full scope of the information compromised, which third-party applications were affected, or precisely how the attackers gained access, and McKesson's investigation remains ongoing.

43. Plaintiffs allege on information and belief that Defendant's data security practices were inadequate to prevent the Data Breach, including with respect to safeguards against social-engineering and credential-based attacks on employee single sign-on accounts, and controls over access to and monitoring of sensitive data stored in third-party cloud environments such as Salesforce and Snowflake.

## II. McKesson's Data Security Failures Constitute Unfair and Deceptive Practices and Violations of Consumers' Privacy Rights

44. The FTC deems the failure to employ reasonable and appropriate measures to protect against unauthorized access to sensitive personal information an unfair act or practice

prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

45. In 2007, the FTC published guidelines that establish reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

46. The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

47. The FTC has issued orders against businesses that have failed to employ reasonable measures to secure sensitive personal information. These orders provide further guidance to businesses regarding their data security obligations.

48. Prior to the Data Breach, and during the Data Breach itself, McKesson failed to follow guidelines set forth by the FTC and actively mishandled the management of its IT security.

49. Furthermore, by failing to have reasonable data security measures in place, McKesson engaged in an unfair act or practice within the meaning of Section 5 of the FTC Act.

## III. The Value of the Disclosed PII/PHI and Effects of Unauthorized Disclosure

50. McKesson understood the protected PII/PHI it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the PII/PHI and those who would use it for wrongful purposes.

51. PII/PHI is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers.

52. Sensitive personal information commonly stolen in data breaches has economic value. The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information on anonymous websites, making the information widely available to a criminal underworld. There is an active and robust market for this information.

53. The forms of PII/PHI involved in this Data Breach are particularly concerning.

54. The ramifications of McKesson's failure to keep Plaintiffs' and Class Members' PII/PHI secure are long lasting and severe.

55. To avoid detection, identity thieves often hold stolen data for months or years before using it. Also, the sale of stolen information on the "dark web" may take months or more to reach end-users, in part because the data is often sold in small batches as opposed to in bulk to a single buyer. Thus, Plaintiffs and Class Members must vigilantly monitor their financial accounts ad infinitum.

56. Thus, McKesson knew, or should have known, the importance of safeguarding the PII/PHI entrusted to it and of the foreseeable consequences if its systems were breached. McKesson failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

57. As a highly sophisticated party that handles sensitive PII/PHI, McKesson failed to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure it protected the security and confidentiality of Plaintiffs' and Class Members' PII/PHI to protect against anticipated threats of intrusion of such information.

58. Identity thieves use stolen PII/PHI for various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes, including credit card fraud, phone or utilities fraud, bank fraud and government fraud.

59. The PII/PHI exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiffs and Class Members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are other ways for cybercriminals to exploit information they already have in order to get even more personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

60. There is often a lag time between when fraud occurs versus when it is discovered, and also between when PII/PHI is stolen and when it is used.

61. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

62. PII/PHI is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market for years.

63. Plaintiffs and Class Members rightfully place a high value not only on their PII/PHI, but also on the privacy of that data.

64. Thus, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

## IV. Defendant's Conduct Violates the Rules and Regulations of HIPAA and HITECH

65. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients, or in this case, patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.

66. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PHI is properly maintained.

67. Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, et seq. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI like the data McKesson left unguarded. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

68. McKesson is a covered entity pursuant to HIPAA. See 45 C.F.R. § 160.102. McKesson must therefore comply with the HIPAA Privacy Rule and Security Rule. See 45 C.F.R. 20 Part 160 and Part 164, Subparts A through E.

69. McKesson is a covered entity pursuant to the Health Information Technology Act ("HITECH"). See 42 U.S.C. §17921, 45 C.F.R. § 160.103.

70. Plaintiffs' and Class Members' PHI is "protected health information" as defined by 45 CFR § 160.103.

71. 45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

72. 45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

73. Plaintiffs' and Class Members' PHI is "unsecured protected health information" as defined by 45 CFR § 164.402.

74. Plaintiffs' and Class Members' unsecured PHI has been acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

75. Plaintiffs' and Class Members' unsecured PHI acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

76. Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

77. Plaintiffs' and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

78. It is reasonable for Plaintiffs and Class Members in this case, to believe that future harm (including identity theft) is real and imminent, and to take steps to mitigate that risk of future harm.

79. The Data Breach could have been prevented if McKesson implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored their obligations to Plaintiffs and Class Members.

80. It can be inferred from the Data Breach that McKesson either failed to implement, or inadequately implemented, information security policies or procedures in place to protect Plaintiffs and Class Members' PHI.

a. McKesson's security failures include, but are not limited to:

b. Failing to maintain an adequate data security system to prevent data loss;

c. Failing to mitigate the risks of a data breach and loss of data;

d. Failing to ensure the confidentiality and integrity of electronic protected health information McKesson creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii);

h. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

i. Failing to protect against any reasonably-anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

j. Failing to ensure compliance with HIPAA security standard rules by McKesson's workforce in violation of 45 CFR 164.306(a)(4);

k. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5);

l. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c);

m. Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, et seq.; and

a. Retaining information past a recognized purpose and not deleting it.

81. The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required McKesson to provide notice of the breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

82. Because McKesson has failed to comply with industry standards, while monetary relief may cure some of Plaintiffs and Class Members' injuries, injunctive relief is necessary to ensure McKesson's approach to information security is adequate and appropriate. McKesson still maintains the PHI of Plaintiffs and Class Members; and without the supervision of the Court via injunctive relief, Plaintiffs and Class Members' PHI remains at risk of subsequent data breaches

## V. <u>The Data Breach Damaged Plaintiffs and Class Members</u>

83. As a result of McKesson's deficient security measures, Plaintiffs and Class Members have been harmed by the compromise of their sensitive PII/PHI, which is likely for sale on the dark web and through private sale to other cyber criminals and/or being used by criminals for identify theft and other fraud-related crimes.

84. Plaintiffs and Class Members face a substantial and imminent risk of fraud and identity theft as their names have now been linked with their dates of birth and Social Security numbers as a result of the Data Breach. These specific types of information are associated with a high risk of fraud.

85. Plaintiffs have been damaged as a result of the Data Breach, inter alia, as described above.

86. Many Class Members will also incur out-of-pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

87. Plaintiffs and Class Members also suffered a "loss of value" of their sensitive PII/PHI when it was stolen by hackers in the Data Breach. A robust market exists for stolen PII/PHI. Hackers sell PII/PHI on the dark web—an underground market for illicit activity, including the purchase of hacked PII/PHI—at specific identifiable prices. This market serves as a means to determine the loss of value to Plaintiffs and Class Members.

88. Identity thieves can also combine data stolen in the Data Breach with other information about Plaintiffs and Class Members gathered from underground sources, public sources, or even Plaintiffs' and Class Members' social media accounts. Thieves can use the combined data to send highly targeted phishing telephone calls, text messages, and emails to Plaintiffs and Class Members to obtain more sensitive information. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiffs' and Class Members' names, taking out loans in Plaintiffs' and Class Members' names, using Plaintiffs' and Class Members' information to obtain government benefits, filing fraudulent tax returns using Plaintiffs' and Class Members' information, obtaining Social Security numbers in Plaintiffs' and Class Members' names but with another person's photograph, and giving false information to police during an arrest.

89. Plaintiffs and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are burdensome and time-consuming, especially because McKesson has disclosed little information about the Data Breach, forcing consumers to continue to monitor their accounts indefinitely.

90. In the case of a data breach, merely reimbursing a consumer for a financial loss due to identity theft or fraud does not make that individual whole again, especially when that individual spent significant time monitoring their accounts and rectifying any problems that arose.

91. A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim whose personal information (including Social Security numbers) has been stolen may not become aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

## **CLASS ACTION ALLEGATIONS**

92. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of the following nationwide Class:

> All persons residing in the United States whose PII/PHI was compromised in the Data Breach.

93. Excluded from the Class is McKesson, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which McKesson has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

94. Plaintiffs reserves the right to modify, expand or amend the above Class definitions or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

95. Certification of Plaintiffs' claims for class-wide treatment are appropriate

because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiffs can prove the elements their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

96. Numerosity. All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The Members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Public reporting of the Data Breach indicates it includes approximately 284 million data records. While Plaintiffs are informed and believe that there are likely millions of members of the Class, the precise number of Class Members is not yet known to Plaintiff.

97. Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

98. Commonality and Predominance. All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a. Whether McKesson engaged in active misfeasance and misconduct alleged herein;

b. Whether McKesson owed a duty to Class Members to safeguard their sensitive PII/PHI;

c. Whether McKesson failed to implement and maintain reasonable security procedures and monitoring practices appropriate for the nature and scope of the information compromised in the Data Breach;

d. Whether McKesson breached its duty to Class Members to safeguard their sensitive PII/PHI;

e. Whether McKesson's conduct violated the FTC Act;

f. Whether McKesson's data security systems and monitoring processes prior to and during the Data Breach complied with applicable law and were consistent with industry standards;

g. Whether McKesson breached implied contracts with Plaintiffs and Class Members;

h. Whether McKesson was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiffs and Class Members;

i. Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of the Data Breach;

j. Whether McKesson's failure to provide adequate security proximately caused Plaintiffs' and Class Members' injuries;

k. Whether McKesson owed a duty to provide timely and adequate notice of the Data Breach to Plaintiffs and Class Members;

l. Whether McKesson failed to notify Plaintiffs and Class Members as soon as practicable and without delay after the Data Breach was discovered; and

m. Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief.

99. Typicality. All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiffs' claims are typical of the claims of all Class Members because Plaintiffs, like other Class Members, suffered theft of their sensitive personal information in the Data Breach.

100. Adequacy of Representation. All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiffs are adequate Class representatives because they are members of the Class and their interests do not conflict with the interests of other Class Members that they seek to represent. Plaintiffs are committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiffs have retained counsel competent and experienced in complex class action litigation of this type, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class's interests.

101. Predominance and Superiority. All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiffs' case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against McKesson, so it would be impracticable for Members of the Class to individually seek redress for McKesson's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides

the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

102. Cohesiveness. All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. McKesson has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE

103. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

104. By collecting and maintaining sensitive PII/PHI, McKesson had a common law duty of care to use reasonable means to secure and safeguard the sensitive PII/PHI and to prevent disclosure of the information to unauthorized individuals. McKesson's duty included a responsibility to implement processes to prevent unauthorized access to its network, including by implementing multi-factor authentication and other precautions.

105. McKesson owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, securing, safeguarding, storing, and protecting Plaintiffs' and Class Members' PII/PHI in its control from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

106. McKesson owed a duty of care to Plaintiffs and Class Members to provide data security consistent with the various industry standards, statutory requirements, regulations, and other notices described above.

107. McKesson's duty of care also arose as a result of the special relationship that existed between McKesson and Plaintiffs and Class Members. The special relationship arose

because McKesson was entrusted with Plaintiffs' and the Class's PII. Only McKesson was in a position to ensure it had sufficient safeguards to protect against the foreseeable risk that a data breach could occur and would result in substantial harm to Plaintiffs and Class Members.

108. McKesson's duties also arose under Section 5 of the FTC Act, 15 U.S.C. § 45. Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect. Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against.

109. McKesson's duties also arose under HIPAA and HITECH. Moreover, the harm that has occurred is the type of harm that HIPAA and HITECH were intended to guard against.

110. McKesson was subject to an "independent duty" untethered to any contract.

111. McKesson also owed Plaintiffs and Class Members a duty to notify them within a reasonable time frame of any breach to their PII/PHI. McKesson also owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiffs and Class Members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of the Data Breach.

112. McKesson owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom McKesson knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, McKesson actively sought and obtained the PII/PHI of Plaintiffs and Class Members.

113. Given the vast amount of highly valuable PII/PHI that McKesson aggregates, the risk that unauthorized persons would attempt to gain access to Plaintiffs' and Class Members' PII/PHI and misuse it was foreseeable.

114. McKesson knew or should have known the importance of exercising reasonable care in handling the PII/PHI entrusted to it.

115. Given the nature of McKesson's business, the sensitivity and value of the PII/PHI it maintains, and the resources at its disposal, McKesson should have identified and foreseen vulnerabilities in its systems and prevented the authorized exfiltration of Plaintiffs' and Class Members' PII/PHI.

116. It was or should have been reasonably foreseeable to McKesson that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII/PHI would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class Members' PII/PHI to unauthorized individuals.

117. It was also foreseeable that McKesson's failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiffs and Class Members.

118. McKesson breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' PII/PHI. But for McKesson's negligence, Plaintiffs and Class Members would not have been injured. The specific negligent acts and omissions committed by McKesson include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiffs' and Class Members' PII/PHI;

b. Failing to comply with—and thus violating—FTC Act and its regulations;

c. Failing to adequately monitor the security of its networks and systems;

d. Failing to have in place mitigation policies and procedures;

e. Allowing unauthorized access to Plaintiffs' and Class Members' PII/PHI;

f. Failing to timely notify Plaintiffs and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

119. It was foreseeable that McKesson's failure to use reasonable measures to protect Plaintiffs' and Class Members' PII/PHI would result in injury to Plaintiffs and Class Members.

120. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry. It was therefore foreseeable that the failure to adequately safeguard Plaintiffs' and Class Members' PII/PHI would result in one or more types of injuries to Plaintiffs and Class Members.

121. Plaintiffs and Class Members had and have no ability to protect their PII/PHI that was, or remains, in McKesson's possession and control.

122. But for McKesson's negligent conduct or breach of the above-described duties, Plaintiffs' and Class Members' PII/PHI would not have been compromised. The PII/PHI of Plaintiffs and the Class was accessed and stolen as the proximate result of McKesson's failure to exercise reasonable care in safeguarding, securing, and protecting such PII/PHI by implementing and maintaining appropriate security measures.

123. McKesson's failure to take proper security measures created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiffs' and Class Members' PII/PHI.

124. Neither Plaintiffs nor the other Class Members contributed to the Data Breach and subsequent misuse of their PII/PHI.

125. As a direct and proximate result of McKesson's negligence, Plaintiffs and Class

Members have been injured as alleged herein. Plaintiffs and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

126. Plaintiffs and Class Members are also entitled to injunctive relief requiring McKesson to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT II
## BREACH OF IMPLIED CONTRACT

127. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

128. McKesson solicited Plaintiffs' and the Class's PII/PHI as part of its regular business practice.

129. Plaintiffs and Class Members reasonably believed and expected that their healthcare providers like McKesson had data security practices that complied with relevant laws, regulations, and industry standards when they entered into the contracts with McKesson.

130. Plaintiffs and Class Members reasonably believed and expected that McKesson would use part of the funds it obtained to oversee adequate data security. McKesson failed to do so.

131. McKesson affirmatively acknowledges that it handles sensitive types of data in its Privacy Policy.

132. Plaintiffs and Class Members would not have provided their sensitive PII/PHI to their healthcare providers, consequently, McKesson, in the absence of McKesson's implied

promise to keep their sensitive PII/PHI reasonably secure.

133. Plaintiffs and Class Members fully performed their obligations under the implied contracts by providing their PII/PHI to their healthcare providers and, consequently, McKesson.

134. McKesson breached its implied contracts with Plaintiffs and Class Members by failing to safeguard and protect their PII/PHI.

135. As a direct and proximate result of McKesson's breaches of the implied contracts, Plaintiffs and Class Members have been injured as alleged herein. Plaintiffs and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

136. Plaintiffs and Class Members are also entitled to injunctive relief requiring McKesson to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT III
## UNJUST ENRICHMENT

137. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

138. Plaintiffs and Class Members conferred a monetary benefit upon McKesson in the form of their valuable PII/PHI, which it used for profit.

139. McKesson was expected to use these profits, in part, to pay for and oversee adequate data privacy infrastructure, practices, and procedures necessary to protect this PII/PHI.

140. Plaintiffs and Class Members allowed McKesson to access and store their PII/PHI on the belief that McKesson complied with its duty to safeguard and protect this information. Putting its short-term profit ahead of safeguarding PII/PHI, and unbeknownst to Plaintiffs and Class Members, McKesson knowingly sacrificed security in favor of collecting more profits. McKesson knew that the manner in which it maintained Plaintiffs' and Class Members' PII/PHI violated its fundamental duties to Plaintiffs and Class Members by disregarding industry-standard security protocols to ensure confidential information was securely transmitted and stored.

141. McKesson had within its exclusive knowledge at all relevant times the fact that it failed to implement adequate security measures to keep PII/PHI secure. This information was not available to Plaintiffs, Class Members, or the public at large.

142. Based on this expectation and trust, McKesson knew that Plaintiffs and Class Members would not have disclosed their sensitive information to it if they had known it had inadequate data security.

143. Plaintiffs and Class Members did not expect that McKesson would store their PII/PHI insecurely and would not have allowed McKesson to store their PII/PHI if they had known of its deficient data security.

144. McKesson enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII/PHI. Under the principles of equity and good conscience, McKesson should not be permitted to retain these benefits.

145. Plaintiffs and Class Members have no adequate remedy at law. McKesson should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class

Members all unlawful or inequitable gains it received.

**COUNT IV**
**DECLARATORY AND INJUNCTIVE RELIEF**

146. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

147. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

148. An actual controversy has arisen in the wake of the Data Breach regarding McKesson's present and prospective common law and statutory duties to reasonably safeguard its consumers' sensitive PII/PHI and whether McKesson is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches. Plaintiffs allege that McKesson's data security practices remain inadequate.

149. Plaintiffs and Class Members continue to suffer injury as a result of the compromise of their sensitive PII and remain at imminent risk that further compromises of their PII/PHI will occur in the future.

150. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. McKesson continues to owe a legal duty to secure Class Members' PII/PHI and to timely notify Class Members of a data breach under the common law and Section 5 of the FTC Act; and

b. McKesson continues to breach this legal duty by failing to employ reasonable measures to secure Class Members' PII/PHI, including to monitor, oversee, and audit its compliance with applicable industry standards, laws, and regulations.

151. The Court also should issue corresponding prospective injunctive relief requiring McKesson to employ adequate security protocols consistent with law and industry standards to protect McKesson's consumers' sensitive PII/PHI.

152. If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another breach occurs, Plaintiffs and Class Members will not have an adequate remedy at law, because not all of the resulting injuries are readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

153. The hardship to Plaintiffs and Class Members if an injunction does not issue greatly exceeds the hardship to McKesson if an injunction is issued. If another data breach occurs, Plaintiffs and Class Members will likely be subjected to substantial identity theft and other damages. On the other hand, the cost to McKesson of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and McKesson has a pre-existing legal obligation to employ such measures.

154. Issuance of the requested injunction will serve the public interest by preventing another data breach concerning McKesson's consumers' PII/PHI, thus eliminating the additional injuries that would result to Plaintiffs and the thousands of consumers whose confidential information would be further compromised.

## **REQUEST FOR RELIEF**

Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against McKesson including the following:

A. Determining that this matter may proceed as a class action and certifying the Class asserted herein;

B. Appointing Plaintiffs as representatives of the applicable Class and appointing Plaintiffs' counsel as Class Counsel;

C. Awarding Plaintiffs and Class Members actual, compensatory, punitive, and nominal damages as set forth above;

D. Ordering injunctive relief requiring McKesson to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) provide lifetime free credit monitoring and identity theft insurance to all Class Members; and (iv) timely notify consumers of any future data breaches;

E. Entering a declaratory judgment stating that McKesson owes a legal duty to secure its consumers' sensitive PII/PHI, to timely notify consumers of any data breach, and to establish and implement data security measures that are adequate to secure sensitive personal information;

F. Awarding attorneys' fees, costs, and expenses, as provided by law or equity;

G. Awarding pre-judgment and post-judgment interest, as provided by law or equity; and

H. Such other relief as the Court may allow.

**<u>DEMAND FOR JURY TRIAL</u>**

155. Plaintiffs demand a trial by jury for all issues so triable.

Dated: September 2, 2026

Respectfully submitted,

*s/ Emil Lippe, Jr.*
Emil Lippe, Jr.
Texas State Bar No. 12398300
**LAW OFFICESLIPPE & ASSOCIATES**
2911 Turtle Creek Blvd., Ste. 1250
Dallas, TX 75219
Telephone: (214) 855-1850
Email: emil@texaslaw.com

Christian Levis (*pro hac vice* forthcoming)
Amanda G. Fiorilla (*pro hac vice* forthcoming)
Michi Rodriguez (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
Email: clevis@lowey.com
Email: afiorilla@lowey.com
Email: mrodriguez@lowey.com

Anthony M. Christina (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
Email: achristina@lowey.com

*Counsel for Plaintiffs and the Class*